421 So.2d 716 (1982)
Frank J. SOCKOLOF and Sally Sockolof, Appellants,
v.
EDEN POINT NORTH CONDOMINIUM ASSOCIATION, INC., Appellee.
No. 81-2311.
District Court of Appeal of Florida, Third District.
November 9, 1982.
*717 Becker, Poliakoff & Streitfeld and Robert J. Manne, Fort Lauderdale, for appellants.
Leff, Pesetsky & Zack and Elliott Zack and Steven R. Dobrofsky, North Miami Beach, for appellee.
Before NESBITT, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The only issues in this case which merit discussion are whether the appellants' attorney was authorized to settle the case on behalf of his clients and, if so, whether the oral settlement agreement between counsel for the parties was entitled to be enforced by the trial court.[1]
*718 The Sockolofs, unit owners in the Eden Point North Condominium, were sued by the condominium association when they failed to pay an assessment for improvements to common grounds of the condominium. A non-jury trial of the action was scheduled to begin on August 10, 1981. On July 27, 1981, the Sockolofs' attorney moved for a continuance, alleging that his clients "have been called away out-of-town for urgent business matters during that trial week and it will prejudice Defendants' case to proceed with the trial without their presence." The defendants served notice that their motion would be heard on August 10, 1981, the very day trial was to begin.
On August 10, 1981, the trial judge denied the requested continuance, but partially accommodated the request by specially setting the trial to begin on Friday of that week, August 14, 1981, at 1:30 p.m. On the evening of August 13, 1981, counsel for the parties orally entered into an agreement settling the case and cancelling the next day's trial. Two weeks later the plaintiff-association moved to enforce the settlement, Sockolofs' counsel moved to withdraw, and Sockolofs' present counsel moved to appear in the case on their behalf. In that sequence, the trial court granted the respective motions and thereafter denied Sockolofs' substituted counsel's ore tenus motion for rehearing. The Sockolofs appeal, and we affirm.
The appellants first contend that the trial court's failure to allow counsel to be substituted denied them due process under circumstances where existing counsel, who had entered into the settlement agreement, was not in a position to advocate his clients' claim that the agreement could not be enforced. While we agree that given this apparent conflict, the motions to withdraw and substitute should have been granted before the trial court embarked on the motion to enforce settlement, we do not agree that the Sockolofs were denied due process. The record reflects that the sole contention which the Sockolofs' new counsel made in his ore tenus motion for rehearing was that the agreement could not be enforced because not in writing. Since we here decide against that contention, the failure of the trial court to allow Sockolofs' new counsel to advance it at an earlier stage is, of course, harmless.
At common law, no particular form of settlement agreement was essential to its validity; a writing was unnecessary, unless required by statute, National Surety Co. v. Willys-Overland, Inc., 103 Fla. 738, 138 So. 24 (1931). The appellants concede that Florida Rule of Judicial Administration 2.060(g), which requires that procedural stipulations during the course of litigation be written or recorded, expressly does not apply to "settlements or other substantive agreements." They correctly argue that therefore case law controls, but incorrectly rely upon cases decided under former Florida Rule of Civil Procedure 1.030(d), which during its existence was construed to require that substantive settlements be in writing. See, e.g., Davies v. Canco Enterprises, 350 So.2d 23 (Fla. 3d DCA 1977); Alaimo v. Tirone, 297 So.2d 584 (Fla. 3d DCA 1974). Rule 1.030(d) was repealed effective July 1, 1979, and the settlement agreement here was entered into August 13, 1981. Thus, the common law rule set forth in National Surety Co. v. Willys-Overland, Inc. applies, and the settlement agreement, although not in writing, was enforceable.
The appellants' challenge to the authority of their attorney to enter into the settlement agreement, while not contained in their ore tenus motion for rehearing, was sufficiently preserved for review when their original trial counsel, explaining how the settlement came about, noted that his clients subsequently questioned his authority to make the settlement.
The record is undisputed that the attorney for the Sockolofs entered into the settlement agreement under the following circumstances:

*719 "MR. WOHL: Your Honor, let me backtrack a second to give you a chronology of events.
"I filed my motion to continue the trial. I came here on calendar call and made a statement to your Honor that my clients were out of town, that it was very difficult for me to get in touch with them, and your Honor denied my motion.
"I then spent a number of hours trying to locate Mr. Sockolof who was, unbeknownst to me, in Canada on matters concerning his health. I told him the set of circumstances. I told him that I was not getting any cooperation from the other defendants in the case. That is Mr. and Mrs. Sachs, who I will get to in a second, and Mrs. Grossberg and Andrews.
"And he said to me, `Do the best that you can under the circumstances.'
"Since I did not effectively have a client to attend the trial, I presumed, under those circumstances, since the other side was ready to go, that, in fact, I was going to lose the case. And I, since this matter is something that should be, under Florida statute on attorney's fees, taxed, and court costs, I agreed to try to mitigate the damages in question.
"Whether I had specific authority to enter into this monetary agreement or not, I entered into this agreement.
... .
"Mr. Sockolof finally came back. He was unable to come back because he was, I believe, in a clinic in Canada for the trial.
... .
"Under the circumstances, your Honor, after speaking to Mr. Sockolof and reviewing with him the stipulation, he stated to me that I did not have authority to agree to not only the enforcement portion but also the monetary portion of the stipulation. And I said, under those circumstances, that I had a conflict of interest and I had to withdraw as counsel and I asked them to seek counsel and gave him the entirety of my file to seek other counsel who has a pending motion here for substitution."
The appellants filed no pleading or affidavit below and made no proffer of evidence challenging the accuracy of their attorney's account of the events. Indeed, on appeal they make no such challenge and instead assert that their attorney misconstrued the meaning of "Do the best you can under the circumstances." There is, then, no dispute as to what occurred between the attorney and the client which required resolution. Compare American Life Insurance Co. v. Laucirica, 217 So.2d 869 (Fla. 3d DCA 1969) (where attorney's authority to settle is a question of conflicting and disputed fact, court not authorized to summarily enter judgment on purported settlement agreement); Massachusetts Casualty Insurance Co. v. Forman, 469 F.2d 259 (5th Cir.1972); Pearson v. Ecological Science Corp., 522 F.2d 171 (5th Cir.1975); Calhoun v. Cook, 487 F.2d 680 (5th Cir.1973) (evidentiary hearing required where material facts concerning authority to settle or existence of agreement in dispute).
It is well established that the mere employment of an attorney to represent a client with respect to litigation or other matters does not of itself give the attorney the implied or apparent authority to compromise or settle his client's cause of action. Cross-Aero Corp. v. Cross-Aero Service Corp., 326 So.2d 249, 250 (Fla. 3d DCA 1976); Palm Beach Royal Hotel, Inc. v. Breese, 154 So.2d 698 (Fla. 2d DCA 1963). We think, however, that the present case falls within an exception to this general rule. This exception, recognized, although not applied, in Bursten v. Green, 172 So.2d 472 (Fla. 2d DCA 1965), is set forth in Brumberg v. Chunghai Chan, 25 Misc.2d 312, 204 N.Y.S.2d 315 (1959), cited with approval in Bursten v. Green, supra. "[W]here the circumstances are such that the attorney is obliged to act without delay, and there is not time or opportunity for consultation with the client, the attorney has power to compromise his client's claim." 204 N.Y.S.2d at 319. In the Brumberg case, Chan, the client, was served with process in a landlord-tenant action and notified his attorney, Brumberg. Chan then went to Hong Kong on personal business. The case *720 was scheduled for trial after two adjournments. Chan had still not returned to the United States, and his attorney was unable to contact him. The attorney, believing that a trial would result in a final dispossess order being entered against his client, entered into a settlement under which the landlord would waive certain rental payments and Chan would drop his counterclaim against the landlord. The court found that under these circumstances, the attorney was empowered to compromise his client's claim.
The appellants' attorney faced a situation not unlike that faced by Mr. Brumberg. Trial was to be the following day, and the Sockolofs were, in his judgment, faced with certain loss, including attorneys' fees and costs. The settlement reached excluded such fees and costs. While it is true that the Sockolofs' attorney had the opportunity to, and in fact did, consult with his client, that consultation resulted in the words "Do the best you can under the circumstances." But these are the very words which are implicit where an emergency exists and no consultation occurs.
We think, then, that the attorney's power to compromise in the emergency situation turns on the attorney's obligation to act without delay and that it exists with equal force where there has been no consultation with the client or where, as here, the result of that consultation is to leave the attorney in exactly the same position as he would have been had no consultation occurred. Thus, when an attorney must act without delay to protect his client's interests, but is able in this emergency to consult with his client about the compromise or settlement of the matter, the client will not be heard to say that the attorney was without power to compromise or settle the matter which he entrusted to the attorney unless the client has then or before said or done something which affirmatively casts doubt on the attorney's power to settle. Since that is not the case here, we affirm the judgment of the trial court.[2]
Affirmed.
BASKIN, Judge (dissenting).
I disagree with the majority opinion which recognizes that apparent conflict on the part of counsel for appellants required the trial court to permit withdrawal and substitution of counsel but concludes that the trial court's refusal to substitute counsel was harmless error.
Although counsel sought to withdraw and have new counsel substituted prior to the hearing on the motion to enforce the settlement agreement, the court decided not to rule on the withdrawal until after it had ruled on appellee's motion to enforce the settlement agreement. The effect of the court's decision was to deprive appellant of the services of counsel. The majority's suggestion that counsel could not offer legally sufficient grounds for denying enforcement of the stipulation is only speculation and ignores the fact that the court refused to hear further argument:
THE COURT: All right. And at this stage I am going to deny his motion to withdraw until I rule on this thing. And I am going to grant his motion to enforce the settlement which was entered into. After that is done, of course, I will grant him leave to withdraw and you can be substituted.
.....
So I am going to grant your motion to enforce your settlement. And I would enter judgment accordingly.
Having done that, I would grant you leave to withdraw.
.....
MR. MANNE: Your Honor 

*721 THE COURT: You can't say anything yet. It is frustrating, but you can't.
Following the court's ruling:
THE COURT: All right. Now, I want to dispose of this other. You have a motion to withdraw, this matter having been completed?
MR. WOHL: Yes, I do.
THE COURT: Then I grant your motion to withdraw.
And you have a motion to substitute as counsel.
MR. MANNE: That is correct, your Honor.
THE COURT: Then I grant your motion.
There is nothing further to be said on this issue today.
MR. MANNE: Well, I was going to request, in light of the fact that we have Mr. Wohl here, and I would make an ore tenis [sic] motion for rehearing on enforcing the stipulation and allow me to be heard on this stipulation issue.
THE COURT: No. You have a right, ore tenis [sic], to make your motion for rehearing. That is quite proper.
Without argument, I will deny your motion for rehearing.
MR. MANNE: Is there any procedure I can use to present my argument regarding the enforcement of this stipulation?
THE COURT: Absolutely not. Not before this Court. You can take it to the Third District, but that is the only relief you are going to get.
MR. MANNE: With the ore tenis [sic] motion for rehearing, I would assume I am entitled to present some kind of argument.
THE COURT: Well, there is nothing to be reheard. I had the matter argued.
MR. MANNE: Well, I don't know that you would have had all of the law presented to you.
THE COURT: Well, I don't grant rehearings. Not just in this case, but in any case. I don't give rehearings. It is just something that I have ruled.
It is clear from the record that new counsel was present and, upon substitution, could have presented appellant's position. No delay was required.
[I]n a civil case any attorney of record has the right to terminate the attorney-client relationship and to withdraw as an attorney of record upon due notice to his client and approval by the court. Approval by the court should be rarely withheld and then only upon a determination that to grant said request would interfere with the efficient and proper functioning of the court. (emphasis supplied).
Fisher v. State, 248 So.2d 479, 486 (Fla. 1971). In the case before us, substitute counsel was ready and willing to argue. Withdrawal and substitution of counsel prior to the hearing on the motion to enforce the settlement would not have interfered with the efficient and proper functioning of the court. The trial court's action in delaying the hearing on the motion to withdraw until after the hearing on the motion to enforce the settlement constituted a clear abuse of discretion. The procedure followed by the court deprived appellant of legal representation, Oliver v. Michigan State Board of Education, 508 F.2d 178, 187 (6th Cir.1974) (Weick, J., dissenting), cert. denied, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975); Roberts v. Anderson, 66 F.2d 874 (10th Cir.1933), and constituted a denial of due process of law. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). Counsel for appellant informed the court that because his client had challenged his authority to settle, he had a conflict of interest. Whether counsel was actually authorized to settle presented a question of fact which should have been decided by the trial court.
The trial court's annoyance was a natural consequence of the announcement, first, that the case had been settled and removed from the court's trial docket, followed by a later statement that trial was required; nevertheless, this court must exercise caution to insure that litigants are not deprived of their day in court and counsel of their choice.
*722 For these reasons, I would reverse the final judgment enforcing the stipulation and remand for an evidentiary hearing to determine the validity of the stipulation after substitution of counsel has been effected.
NOTES
[1] The appellants' claims that the trial court erred in denying them a continuance of the trial and that the settlement agreement was too indefinite to be enforced are without any merit whatsoever. The denial of continuance was clearly within the trial court's discretion, and the only part of the settlement which the trial court enforced was clear and definite.
[2] The appellee-association advances one further basis for affirming the attorney's authority. Relying on Rushing v. Garrett, 375 So.2d 903, 906 (Fla. 1st DCA 1979), it says that "apparent authority may arise when the actions of the principal, reasonably interpreted, cause a third person to believe in good faith that the principal consents to the acts of the agent." The record here, however, contains no evidence that appellee's counsel relied on any action of the principals, the Sockolofs.